IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH ALBRIGHT, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> THE TRUSTEES OF THE UNIVERSITY OF : <br> PENNSYLVANIA, and SHERRIE DAVIS, : <br> individually, : <br> : <br> Defendants. : | Civil Action <br> No._____ |

## COMPLAINT

1. Plaintiff, Keith Albright, respectfully brings this action to recover damages and penalties against defendants because they discriminated and retaliated against him in violation of the American with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq ("ADA"), Title 29 of the Family and Medical Leave Act of 1993, the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et. seq. ("PHRA"), and the Philadelphia Fair Practices Ordinance, §9-1100 et seq ("PFPO").

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under the ADA and the FMLA. The Court also has supplemental jurisdiction over the State and Local Causes of Action.

3. Venue is proper as the events giving rise to this action occurred wholly within the Eastern District of Pennsylvania.

4. On or around April 24, 2018, Plaintiff dual-filed charges with the EEOC and PHRC against Defendants as set forth herein.

5. On or around October 12, 2018, the EEOC sent Plaintiff a Notice of Suit Rights.

6. This action is being commenced within 90 days of receipt of the EEOC's Notice of Suit Rights.

## PARTIES

6. Plaintiff, KEITH ALBRIGHT (hereinafter also referred to as Plaintiff and/or "Mr. Albright") is an individual male, disabled but otherwise qualified, who is a resident of the Commonwealth of Pennsylvania.

7. Defendant THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA hereinafter also referred to as Defendant and "PENN") is a domestic nonprofit corporation existing under the laws of the Commonwealth of Pennsylvania.

8. At all times material, Defendant PENN is the owner and operator of Clinical Practices of the University of Pennsylvania, with a business location at 3400 Civic Center Blvd. 3rd Floor, South Pavilion Philadelphia PA 19104

9. At all times material, Defendant SHERRIE DAVIS (hereinafter referred to as "Defendant" or "Davis") was employed by Defendant PENN as the Associate Director of Audiology.

10. At all times material, Defendant DAVIS held supervisory authority over Mr. Albright.

11. At all times material, Defendants employed Mr. Albright.

## FACTS

12. At all times material, Mr. Albright is diagnosed with Clinical Depression. According to the Mayo Clinic, Clinical Depression is the more-severe form of depression, also known as major depression or major depressive disorder and its symptoms are usually severe enough to cause noticeable problems in relationships with others or in day-to-day activities, such as work, school or social activities.

13. As a result of this diagnosis, Mr. Albright is prescribed multiple medications to help treat the chronic symptoms of his Clinical Depression.

14. Despite his disability, Mr. Albright was an otherwise qualified individual, capable of performing the essential functions of a Clinical Audiologist.

15. Around November 25, 2013, Defendant hired Mr. Albright as a "Clinical Audiologist."

16. As a Clinical Audiologist, Mr. Albright identified and assessed hearing problems, counseled patients and their families and caregivers, fitted hearing aids, determined patient's needs for assistive devices, and taught communication strategies.

17. Beginning in or around July of 2015, Mr. Albright's department was continually short staffed due to numerous operation issues, lack of auxiliary staff, and other employees taking sick or medical leave.

18. As a result, Mr. Albright was forced to work numerous additional hours per week, sometimes as many as twenty (20), over and above the forty (40) hours he was hired to perform.

19. Because of the increased workload, Mr. Albright was continuously unable to take any breaks during the day, even to use the restroom or eat lunch.

20. The excessive workload caused Mr. Albright a great deal of stress and anxiety.

21. As a result of Defendants actions, Mr. Albright's symptoms worsened, and Mr. Albright began to suffer anxiety attacks both at home and at the workplace. Mr. Albright further suffered from insomnia and lost the ability to respond to external stimuli.

22. Despite suffering from clinical depression, Mr. Albright was still able to effectively treat his patients. In fact, Defendants recognized Mr. Albright's outstanding care and compassion on multiple occasions through their employee recognition program including November of 2015 and again in March of 2016.

23. In or around the summer of 2016, Mr. Albright began arriving to work late as a direct result of his serious and disabling health conditions.

24. At this point, Mr. Albright informed Defendant DAVIS that he was struggling with debilitating health conditions and Defendant DAVIS suggested that Mr. Albright take advantage of the Employee Assistance Program ("EAP").

25. In or around the fall of 2016, Mr. Albright applied for, and was granted, eight sessions with a counselor under the EAP. Mr. Albright though was only able to attend approximately five or six sessions due to the difficulty of scheduling appointments around continuously increasing job demands.

26. In or around July of 2017, Defendant DAVIS suggested again that Mr. Albright "go see HR" and inquire about the use of FMLA leave.

27. Mr. Albright met with HR and applied for intermittent FMLA leave.

28. In or around the Fall of 2016, Mr. Albright also asked Defendant DAVIS if there was another shift that he could work, or if he could be scheduled to come in later. In response Defendant DAVIS changed Mr. Albright's start time from 8:00am to 8:30am.

29. This boondoggle served no purpose though, as Mr. Albright would still unable to call out by 7:00am when his disability flared up.

30. Mr. Albright continued to try to engage Defendants in an interactive conversation because only a half-hour change was not an effective reasonable accommodation.

31. On or around September 17, 2017, Mr. Albright's intermittent FMLA leave was approved by Defendants, allowing him two instances of leave for up to three hours per week.

32. Defendants Human Resources department told Mr. Albright that all he had to do was say he was using his FMLA and that he would not be disciplined, interfered with, or otherwise retaliated against.

33. Defendants also instructed Mr. Albright that he should not discuss "his problem," that he was to refer to his disability only as "his problem," and that he was not to discuss his FMLA leave with anyone other than HR and Defendant Davis.

34. However, Defendant DAVIS informed Mr. Albright that he was "using his FMLA wrong" the very first time Mr. Albright attempted to take his approved FMLA leave.

35. Defendant DAVIS again stated to Mr. Albright that he had to call out by 7:00am if he was going to be late for work.

36. Mr. Albright again explained to Defendant Davis that, due to his disability, he was medically unable to follow the call out procedure and again requested accommodation.

37. Defendant DAVIS did not engage in any type of interactive process with Mr. Albright and did not offer any possible solutions if his disability caused him to sleep past 7:00am.

38. When Mr. Albright asked again what he was supposed to do if his disability caused him to be late, Defendant DAVIS simply responded with words to the effect of "I don't know what you're supposed to do."

39. Defendants' position effectively neutered Mr. Albright's FMLA rights and made it impossible for him to utilize his FMLA leave.

40. At no time did Defendants attempt to provide effective reasonable accommodations to Mr. Albright that would allow him to continue to perform the essential functions of his job.

41. Such reasonable accommodations may have included modifying Mr. Albright's schedule by allowing him to schedule patients later in the day, adequately staffing the

Otorhinolaryngology-Audiology department, transferring him to another open position, modifying Mr. Albright's job duties, or modifying Mr. Albright's call out procedure.

42. Upon information and belief, other employees in Defendant PENN's Audiology Department were able to modify their schedule by scheduling patients after 5:00pm.

43. Mr. Albright's work duties generally consisted of a half a day of hearing tests, which were performed by every member of the audiology department, and a half a day of his specialty hearing aid fittings. Defendants reasonably could have limited Mr. Albright's duties to performing just hearing aid fittings beginning later in the day.

44. On or around December 6, 2017, Defendants unlawfully terminated Mr. Albright for "violation of the reporting off policy," specifically that he arrived late to work without any prior notification.

45. On or around February 26, 2018, Defendants sent Mr. Albright a letter stating that they had accepted his resignation effective December 6, 2017.

46. Mr. Albright had never resigned or offered to resign his position and upon information and belief this letter was sent by Defendants in further retaliation for Mr. Albright's protected activities under the ADA and the FMLA and/or in attempt to conceal their unlawful conduct.

47. Mr. Albright claims constructive and/or actual discharge and also seeks reinstatement.

48. Mr. Albright claims a continuous practice of discrimination and claims a continuing violations and makes all claims herein under the continuing violations doctrine.

49. As a result of Defendants' actions, Mr. Albright felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

50. As a result of Defendants' actions, Mr. Albright has been forced to seek professional psychiatric care and treatment.

51. As a result of the acts and conduct complained of herein, Mr. Albright has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Mr. Albright also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Mr. Albright has further experienced severe emotional and physical distress.

52. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Mr. Albright demands Punitive Damages as against Defendants.

53. The above are just some examples of some of the discrimination, retaliation, and interference to which Defendants subjected Mr. Albright.

54. The Defendants have exhibited a pattern and practice of not only tolerating discrimination and retaliation, but also failing to investigate and cure the wrong once it has been reported.

55. Plaintiff claims that Defendants discriminated against and terminated Plaintiff because of his disability and because he engaged in protected activity.

### FIRST CAUSE OF ACTION
### DISCRIMINAITON
### UNDER THE AMERICANS WITH DISABILITIES ACT

56. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

57. Plaintiff claims Defendant PENN violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

58. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall

discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

59. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability – namely that he was treated less favorably than other similarly situated employees who were not disabled.

60. Plaintiff has been damaged as set forth herein.

**SECOND CAUSE OF ACTION**
**FAILURE TO ACCOMODATE**
**UNDER THE AMERICANS WITH DISABILITIES ACT**

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

62. Plaintiff claims Defendant PENN violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

63. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

64. Defendant engaged in an unlawful discriminatory practice by failing to accommodate Mr. Albright's disability.

65. Plaintiff has been damaged as set forth herein.

### THIRD CAUSE OF ACTION
### RETALIATION
### UNDER THE AMERICANS WITH DISABILITES ACT

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

68. Plaintiff opposed Defendant PENN's unlawful acts and practices and was retaliated against as set forth herein.

69. As a result of Defendant's retaliation, Plaintiff suffered damages.

### FOURTH CAUSE OF ACTION
### INTERFERENCE AND RETALIATION
### UNDER THE FAMILY MEDICAL LEAVE ACT

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

71. Title 29 of the Family and Medical Leave Act of 1993, Chapter 28, Subchapter I, § 2615 states as follows: "Prohibited Acts: (a) Interference with Rights (1) Exercise of Rights: It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise and right provided under this subchapter. (2) Discrimination: It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

72. Defendants interfered with Plaintiff's rights under the above section and discriminated against Plaintiff for opposing Defendants' unlawful employment practice and exercising her rights.

73. Defendants violated the FMLA by interfering with, restraining and/or denying Plaintiff's rights under the FMLA, including, but not limited to, by:

    a. Failing to comply with the general notice requirements under the FMLA;
    b. Failing to comply with the eligibility notice requirements under the FMLA;
    c. Failing to comply with the rights and responsibilities notice requirements under the FMLA;
    d. Failing to comply with the designation notice requirements under the FMLA;
    e. Failing to provide notice of a fitness-for-duty certification with the designation notice as required by the FMLA;
    f. Failing to continue to contribute to Plaintiff's health benefits while she was placed on involuntary medical leave;
    g. Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform her duties;
    h. Retaliating against Plaintiff for asking for a reasonable accommodation and/or leave to attend her doctor's appointment.
    i. In the alternative, forcing Plaintiff to go into involuntary, full-time medical leave;
    j. Failing to provide Plaintiff with the proper FMLA forms and/or medical certifications;
    k. Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;
    l. Upon information and belief, failing to have an audit of Defendant's FMLA policies, procedures and compliance at its branch offices.

74. Defendants' violations of the FMLA were grossly negligent and/or willful.

75. As a direct and proximate cause of Defendants violation of the FMLA, Defendants are liable for Plaintiff's compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of their violation, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff. See 29 CFR 825.300 (e).

**FIFTH CAUSE OF ACTION**
**DISCRIMINATION**
**UNDER PENNSYLVANIA HUMAN RELAITONS ACT**

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

78. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability.

79. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## SIXTH CAUSE OF ACTION
## RETALIATION
## UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

81. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

82. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## SEVENTH CAUSE OF ACTION
## AIDING AND ABETTING
## UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

85. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## EIGHTH CAUSE OF ACTION
## DISCRIMINATION
## UNDER THE PHILADELPHIA FAIR PRACTICES ORDINANCE

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. The Philadelphia Fair Practice Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice to practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited, to the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

88. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practice Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's disability.

89. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Philadelphia Fair practice Ordinance Chapter 9-1100.

## NINTH CAUSE OF ACTION
### RETALIATION
### UNDER THE PHILADELPHIA FAIR PRACTICES ORDINANCE

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

91. The Philadelphia Fair Practice Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she, or it has complied with the provisions of this chapter, exercised his, her or its rights under this chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

92. Defendant engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practice Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practice of Plaintiff's employer.

## TENTH CAUSE OF ACTION
### AIDING AND ABETTING
### UNDER THE PHILADELPHIA FAIR PRACTICES ORDINANCE

93. Plaintiff repeats and realleges each and every allegation made in the above paragraph of this complaint.

94. The Philadelphia Fair Practice Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

95. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practice Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this section or any order issues hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

96. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practice Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
December 10, 2018

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff Keith Albright*

By: _____
Caroline H. Miller, Esq.
J. Patrick Griffin, Esq.
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Tel. (215) 391-4790